UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Travis Brill,

      Plaintiff,

    -v-                          Case No. 2:09–cv–534

AK Steel Corp.,                     Judge Michael H. Watson

      Defendant.

## OPINION AND ORDER

Plaintiff Travis Brill ("Plaintiff") is a member of the uniformed services in the United States Marine Corps Reserves and alleges his employer's military leave policy violates § 4316(b)(1) of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301, *et seq.* Specifically, Plaintiff alleges the military leave policy deprived him of certain rights and benefits that were generally provided to other employees who were on furlough or leaves of absence for jury duty. Defendant AK Steel Corporation ("Defendant") moves for summary judgment, arguing, *inter alia*: (1) Plaintiff's claims are barred by the federal statute of limitations and/or laches; (2) Defendant's military leave policy is not comparable to its jury duty leave policy; (3) Plaintiff is not entitled to back pay because his claims are too speculative; and (4) Plaintiff has not provided evidence of willful violation, precluding recovery of liquidated damages. For the reasons that follow, the Court denies in part and grants in part Defendant's motion for summary judgment.

## I. FACTS

The parties do not dispute the material facts in this case, which are as follows.
Plaintiff is a citizen of the State of Ohio. Defendant is a Delaware corporation that
finishes and treats stainless steel at its Coshocton Works facility in Coshocton, Ohio.
Plaintiff is thirty-five years old and has been employed by Defendant since May 30,
2000. Brill Dep. 9–10, 14, ECF No. 20-1. Plaintiff has held a variety of positions and
currently is assigned to the maintenance operator program. *Id.* at 16–17. The terms of
his employment are governed by a series of collective bargaining agreements ("CBAs")
and have been since Defendant entered into the first CBA with United Automobile,
Aerospace and Agricultural Implement Workers of America (the "Union") on April 1,
2004.[1] Decl. Mizer 1, ECF No. 21-1. Plaintiff often works a "float" schedule requiring
seven days on and one day off, then seven days on and two days off, then seven days
on and four days off in any given twenty-eight day cycle. Such a schedule can include
weekend work and is subject to change depending on the needs of the plant. Mizer
Dep. 24, 36, ECF No. 22.

In addition to working for Defendant, Plaintiff has been a member of the United
States Marine Reserves since 1993. Brill Dep. 48–49, ECF No. 20-1. Throughout his
employment with Defendant, Plaintiff periodically took leaves of absence from work due
to his military obligations. These obligations included active duty, funeral duty, training,
and appointments with Veterans Administration ("VA") physicians. *Id.* at 26–28, 32,
53–54. Although Plaintiff was twice called for active duty that required his absence

---

[1]Plaintiff has been a member of the Union since the Union came into existence. Brill Dep. 112–3, ECF
No. 20-1.

from work for extended periods of time,[2] the parties agree that many of his leaves lasted four weeks or less. Specifically, Plaintiff's annual training was typically scheduled once annually and lasted between two and four weeks. His weekend drills lasted between three to five days and took place at least once a month, while his funeral duty lasted only one day but was scheduled more sporadically. *Id.* at 27, 53, 70. With the exception of VA appointments, Plaintiff was generally compensated by the military for each military-related leave of absence. *Id.* at 100.

Defendant provides benefits for certain types of leaves of absence, including military. The two policies at issue in this case are Defendant's military leave policy and its jury duty/witness leave policy. To obtain a leave of absence under the military policy, an employee must provide official documentation and complete an application. Decl. Mizer 1, ECF No. 21-1. The CBA further provides:

> Should regular full-time employees with one or more years of continuous service be required to attend a camp for up to two weeks with the United States Armed Forces, they will be paid the *difference between military pay and what they would have received on their regular job* . . . .

Brill Dep. Ex. N PAGEID # 195, ECF No. 20-8 (emphasis added).[3] Defendant's military leave policy covers only leaves for the purpose of attending camps, and Plaintiff was apparently never given paid leave benefits for his weekend training or drilling duties or his military funeral duties. Mizer Dep. 23, ECF No. 22.

When an employee misses work due to jury/witness duty, Defendant's jury

---

[2]Plaintiff served in Iraq from January 4, 2005 to January 3, 2006 and served in Afghanistan from March 2010 to at least January 18, 2011. Brill Dep. 33–34, 46, ECF No. 20-1.

[3]While this language reflects the policy in the current CBA, the parties agree that it is essentially the same as the policy effective at all times applicable to this case. Def. Mot. Summ. J. 4, ECF No. 21; Pl. Resp. in Opp. Def. Mot. Summ. J. 3, ECF No. 23.

duty/witness leave policy applies. That policy provides:

1.  If an employee is called for jury duty or subpoenaed as a witness, and proof of service is submitted, the employee will be excused from work for the days that the employee serves. Jury service includes required reporting for jury or witness duty when summoned.

2.  Jury or witness duty pay will be calculated at eight times the employee's straight time hourly bid job rate.

3.  If a portion, or all of the employee's jury duty or witness service occurs during a leave of absence, unpaid FMLA leave, Sickness and Accident leave, vacation, or paid holiday for which the employee would already be paid, or would not have worked, the employee will not be eligible to receive jury duty/witness service pay for that time.

4.  Jury or witness service pay will be counted as hours worked for determining overtime or premium pay.

Brill Dep. Ex. N PAGEID # 194, ECF No. 20-8.[4] Thus, pursuant to Defendant's military leave policy, Plaintiff received only the difference between what he would have been paid by the Defendant had he worked and what he was actually paid by the government for any covered leave of absence due to military service, while employees on jury duty/witness leave were paid their full salary *plus* whatever payment they received from the government for their service.

In 2006, upon returning from service in Iraq, Plaintiff apparently heard from other Marines that they received certain paid military-leave benefits from their employers that he did not receive from Defendant. Brill Dep. 112, ECF No. 20-1. Shortly thereafter, Plaintiff inquired with the human resources representative, who was himself a veteran, as to whether he was receiving every available benefit. *Id.* at 108–09. Although

---

[4]While this language reflects the policy in the 2007 CBA, the parties agree that it is essentially the same as the policy effective at all times applicable to this case. Def. Mot. Summ. J. 4, ECF No. 21; Pl. Resp. 3, ECF No. 23.

Plaintiff was assured that he was receiving every benefit to which he was entitled, he began researching USERRA on his own. *Id.* at 112.

The crux of Plaintiff's compliant in this action is that he was denied certain rights and benefits while he was on military leave that were granted to other employees having similar seniority, status, and pay who were on jury/witness duty leave. Plaintiff brought this complaint formally to Defendant first in 2008, through the CBA's grievance and arbitration process. He filed his grievance on September 29, 2008 and sought lost wages for each day he performed military service since the inception of the CBA in 2004. Brill Dep. Ex. P PAGEID # 229, ECF No. 20-10.[5] Defendant denied the grievance, and the Union proceeded to the next step in the formal grievance and arbitration process. Brill Dep. Ex. Q PAGEID # 230, ECF No. 20-10. At this step, Defendant and the Union would have met in person to discuss the grievance and attempt to come to a resolution; however, Defendant did not timely respond to the Union's request. Therefore, the Union proceeded to the final step in the grievance and arbitration process — binding arbitration. Brill Dep. Ex. R PAGEID # 231, ECF No. 20-10. Plaintiff later decided to pursue his claim in court, as opposed to arbitration, and filed his complaint in this case on June 25, 2009. Compl., ECF No. 1.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the

---

[5]While the grievance sought backpay "for all time lost since contract ratification in April 2004," Brill Dep. Ex. Q PAGEID # 230, ECF No. 20-10, in this case, Plaintiff "is not claiming any damages resulting from . . . long stints [of active duty], just from the short-duration training exercises, drills, and funeral duty stints before and after his Iraq service in 2005." Pl. Resp. in Opp. Def. Mot. Summ. J. 2, ECF No. 23.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Petty v. Metro. Gov't. of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not be granted if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

Defendant moves for summary judgment, arguing there is no genuine dispute of

material fact and it is entitled to judgment as a matter of law. Defendant argues first that Plaintiff's claim fails on the merits because USERRA requires only benefits that are equal to benefits provided under comparable leave policies, and Defendant's military leave policy and jury duty/witness policy are not comparable. Second, Defendant contends Plaintiff's claims are barred by the applicable statute of limitations and/or laches. Next, it asserts Plaintiff's claims for back pay cannot stand because they are speculative and lack evidentiary support. Last, it argues Plaintiff cannot collect liquidated damages because he has provided no evidence of willful violation. Def. Mot. Summ. J. 1–2, ECF No. 21. Because Defendant's remaining arguments are moot if it succeeds on the comparability contention, the Court addresses that argument first.

## A. Comparability of Military Leave with Jury Duty/Witness Leave

Defendant argues it is entitled to summary judgment because USERRA only requires that employees on military leave be afforded the same benefits accorded under any comparable form of leave for other employees, and Defendant's military leave policy and jury duty/witness leave policy are not comparable. Plaintiff responds that the two types of leave are comparable, and he should thus be afforded the benefits given to employees under Defendant's jury duty/witness leave policy, namely full pay for work missed pursuant to leave. Pl. Res. in Opp. Mot. Summ. J. 8, ECF No. 23.

The applicable provision of USERRA states:

Subject to paragraphs (2) through (6), a person who is absent from a position of employment by reason of service in the uniformed services shall be--

(A) deemed to be on furlough or leave of absence while performing such service; and

(B) entitled to such other rights and benefits not determined by seniority as

are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1). The Department of Labor explains in its regulations

implementing USERRA:

If the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the *most favorable treatment accorded to any comparable form of leave* when he or she performs service in the uniformed services. In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

20 C.F.R. § 1002.150(b) (emphasis added). Thus, the leaves must be comparable for

Plaintiff to be entitled to the same benefits given to employees on jury/witness duty

leave. 20 C.F.R. § 1002.150(b).

In arguing that military leave and jury duty/witness leave are not comparable,

Defendant offers one difference between the two types of leave: employees receive

vastly different amounts of compensation from the government for his or her service

under each type of leave. Def. Mot. Summ. J. 15, ECF No. 21. Defendant argues this

difference highlights the purposes of its leave policies, which are both intended to make

the employees whole for their time away from work so they are "effectively in the same

position they would have been in had they not been called to military or jury or witness

service." *Id.* Defendant argues that employees on jury duty will suffer hardship if not

paid their full salary because the payment for jury duty is nominal, but service members

receive greater pay from the government and therefore do not need to receive their full salary from Defendant to avoid financial hardship.

Despite the fact that he is paid more by the government for his military leave than jurors are paid for jury duty, Plaintiff argues the two types of leave are comparable. Plaintiff argues his short military leaves for weekend obligations (ranging from three to five days) are comparable in duration to jury duty and witness leaves and that even his longer annual leaves (ranging from two to four weeks) are comparable to jurors who serve on a difficult case. Likewise, Plaintiff argues that like jurors, service members have no choice in the timing or duration of their leave.

### 1. Case Law

Case law regarding whether military leave is comparable to jury duty/witness leave is sparse, and binding case law is virtually non-existent. Both parties agree *Waltermyer v. Aluminum Co. of America*, 804 F.2d 821 (3rd Cir. 1986) is instructive as § 4316(b)(1) was intended to codify that decision. Def. Mot. Summ. J. 13, ECF No. 21; Pl. Resp. in Opp. Def. Mot. Summ. J. 8, ECF No. 23; *see also* H.R. Rep. 103-65, Pt. I, *33–34 (April 28, 1993) ("The Committee intends to affirm the decision in *Waltermyer* . . . that, to the extent the employer policy . . . varies among various types of non-military leaves . . . the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid."). Defendant argues *Waltermyer* supports its position by confirming that employees on military leave are entitled to equal, not preferential, treatment. *Waltermyer* is neither binding on this Court nor supportive of Defendant's motion.

*Waltermyer* was decided under a precursor to USERRA, the Vietnam Era

Veterans' Readjustment Assistance Act, and considered whether an employee was entitled to holiday pay for a holiday that occurred during a military leave of absence. The employer in *Waltermyer* wanted to discourage excessive absenteeism during holiday weeks, and therefore, employees were not entitled to holiday pay unless they either worked every day in the week that the holiday fell or fell into an exempt category. *Waltermyer*, 804 F.2d at 825. One of the exempt categories was for employees on jury duty, and the court found that military leave shared the "essential features" of the exempt categories such that an employer could not deny holiday pay for employees who missed work in the week of the holiday because of military service. The court found the essential features of other exempt categories, such as jury duty, to be: (1) the government compels the attendance; (2) the employee does not choose when to comply; (3) the employee is not attempting to extend the holiday; and (4) the absence is generally not of extended duration. The court noted that "[e]ach of these characteristics holds true when the leave of absence is for military training." *Id.*

In this case, Defendant fails to demonstrate that military leave is incomparable to jury duty/witness leave solely because the former is paid more by the government than the latter. Other factors such as duration, voluntariness of leave, and purpose of the leave policy must also be considered. Although military leave is arguably voluntary in the sense that service is not compulsory, the timing of specific leaves for annual training or weekend drills is involuntary, as is timing for jury duty. Plaintiff stated the annual training, weekend drills, funeral duty and VA appointments generally last between three and five days, or two and four weeks at the longest. Such a length may be comparable to the duration of jury duty. Moreover, the purposes of the leave policies are

comparable, as both were meant to ensure employees are "made whole" by putting them "effectively in the same position they would have been in had they not been called to military or jury or witness service." Def. Mot. Summ. J. 15, ECF No. 21. Paying employees on jury duty or witness leave (but not those on military leave) their full salary in addition to their jury duty pay, however, does not effectuate the stated purpose of making employees whole as it instead confers a small overpayment. The Court finds that military leave and jury duty/witness leave are not incomparable solely because the government pays more for military duty than it does for jury or witness duty.

Defendant argues Plaintiff would receive a windfall and thus be treated preferentially, rather than equally, if he received his full pay in addition to his military pay. As an example, Defendant calculates one day for which Plaintiff was on military leave for drill. That day, Plaintiff received $207.00 from the military. Under Defendant's military leave policy, Defendant paid Plaintiff nothing because he would have only been paid $164.00 had he worked a full day. On the other hand, a juror reporting to the Coshocton County Court of Common Pleas for jury duty would have received $15 from the government had they spent that day at jury duty. Under Defendant's policy, that employee would have been paid the full $164.00 for missing work, but even with the extra $15 from jury duty would have received less than Plaintiff's $207.00 received for military service. Therefore, Defendant argues that paying Plaintiff $164.00 in addition to the $207.00 he received from the government equates to preferential treatment. The Court disagrees. Defendant would not be providing anything it does not already provide to employees on jury duty/witness leave by paying Plaintiff his full salary for time spent on military leave. Actually, by paying an employee in this manner, Defendant would be

complying with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave.

None of the other precedent cited by Defendant is binding on this Court, nor does it compel a grant of summary judgment in this situation. *See Rogers v. City of San Antonio*, 392 F.3d 758, 771–72 (5th Cir. 2004), ("[t]here are genuinely disputable issues as to the material facts of whether involuntary non-military leaves, not generally for extended durations, for jury duty . . . are comparable to each plaintiff's military leaves taken for service in the uniformed services."); *Tully v. Department of Justice*, 481 F.3d 1367, 1371 (Fed. Cir. 2007) (interpreting § 4316(b)(1)(B) in the context of federal employees and lengthy active duty leave).

Moreover, this Court's prior analysis in *Schmauch v. Honda of America Manufacturing*, 295 F. Supp. 2d 823, 836–39 (S.D. Ohio 2003), albeit in dictum, supports this finding. *Schmauch* involved the issue whether extending an employee's Attendance Improvement Program ("AIP") by the amount of time he is on military leave violates the FMLA and USERRA. In *Schmauch*, the plaintiff argued he was denied a benefit, in violation of § 4311 of USERRA, when defendants extended his AIP by the amount of his military leave. Defendants argued that failing to extend his AIP by that time would be akin to affording the plaintiff special treatment, but this Court disagreed because other employees on jury duty leave did not have their AIPs extended. Although deciding the case under § 4311 rather than § 4316, the Court denied Defendant's motion for summary judgment, stating:

> Defendant has not offered to this Court a satisfactory explanation for why it treats associates differently depending on which sovereign — the judicial branch or the executive branch — calls upon them. The Court does not

believe there is a justifiable distinction. Both military leave and jury duty are compulsory, beyond the control of the employee, and may last for a comparable amount of time.

*Id.* at 837. Thus, available case law counsels against granting Defendant's motion on this issue.

### 2. Legislative and Regulatory History

Because it is not clear from the face of the Act whether military leave is comparable to jury duty leave, it is appropriate to consider legislative history in addition to case law. *Broadcast Music, Inc. v. Roger Miller Music, Inc.*, 396 F.3d 762, 769–70 (6th Cir. 2005) (courts first look to the language of the statute itself but may look to legislative history if the meaning of a statute is ambiguous on its face). Moreover, USERRA authorizes the Secretary of Labor (in consultation with the Secretary of Defense) to prescribe regulations governing the Act's application to States, local governments, and private employers. 38 U.S.C. § 4331. It is therefore also helpful to consider statements of the Department of Labor ('Department") in enacting its implementing regulations to USERRA. *Gambrel v. Kentucky Bd. of Dentistry*, 689 F.2d 612, 619 (6th Cir. 1982) ("In the absence of such judicial interpretation, we place great persuasive weight on the interpretation of the statute by the administrative body charged with enforcing it."). Both the legislative history of the Act and the regulations implementing the Act support the Court's conclusion.

Congress intended USERRA to be liberally construed. H.R. Rep. No. 103-65, at 19 (1993). Still, it did not intend service members to "receive benefits beyond what they would have received had they remained continuously employed." *Id.* at 34.

Specifically, a Senate Report indicates the Committee on Veterans' Affairs intention that an employee on military leave is not entitled to benefits he would not otherwise be entitled to if not on military leave. S. Rep. No. 103-158, at 59 (1993). Similarly, the Department cautioned:

[t]he Department also interprets section 4316(b) of the Act to mean that an employee who is absent from a position of employment by reason of service is not entitled to greater benefits than would be generally provided to a similarly situated employee on non-military furlough or leave of absence.

Uniformed Services Employment and Reemployment Rights Act of 1994, 70 Fed. Reg. 75,245, 75,262 (Dec. 19, 2005). These statements may appear at first blush to support Defendant's windfall argument. But, as explained above, the benefit conferred by Defendant is Plaintiff's salary. His full salary is a benefit he would otherwise be entitled to if not on military leave. By granting the same right to Plaintiff as to employees on jury duty leave, Defendant would not be providing a *greater* benefit to Plaintiff than to other employees.

Further, under Defendant's reasoning, military leave could never be comparable to any unpaid leave. However, legislative history shows the Committee on Veterans' Affairs intended employees to receive the most favorable benefits granted under comparable forms of leave, "regardless of whether the non-military leave is paid or unpaid." H.R. Rep. 103-65, at 34–35 (1993). When enacting subsequent regulations, the Department therefore specifically "declined to include as a factor in determining the comparability of leave whether the non-military leave is paid or unpaid." 70 Fed. Reg. at 75,264. Thus, whether jury duty includes any (not to mention how much) outside payment should be irrelevant to the question of whether the forms of leave are

comparable.

Moreover, when enacting the implementing regulations, the Department selectively cited to cases decided under USERRA and its predecessor statutes "to explain and illustrate the rights and benefits established under the Act." 70 Fed. Reg. at 75,246. When reiterating its mandate that an employee on military leave is entitled to the greatest benefits afforded under a comparable form of leave, the Department cited *Schmauch* for the proposition that an "employer improperly treated jury duty more favorably than military leave." 70 Fed. Reg. 75,262. The Department's specific inclusion of this case in the Federal Register for that proposition evidences at least the Department's approval of the notion that jury duty and military leave may be comparable.

For all these reasons, the Court declines to find that military leave and jury duty/witness leave are not comparable solely because the former pays more than the latter and denies Defendant's motion with respect to this issue.

## B. Statute of Limitations/Laches

### 1. Statute of Limitations

The Court now turns to Defendant's contention that Plaintiff's claims are time-barred by the then-applicable statute of limitations. From 1994–2008, USERRA barred the application of State statutes of limitations and was silent concerning the federal statute of limitations. The Act was amended on October 10, 2008 to state that no statute of limitations of any kind applied to USERRA claims. Plaintiff filed his complaint on June 25, 2009, asking for damages incurred since the year 2000. Defendant argues the federal four-year statute of limitations in 28 U.S.C. § 1658 applied prior to October

10, 2008 and that any claims arising from events that occurred prior to October 10, 2004 should be time-barred. Plaintiff argues that no statute of limitations ever applied to USERRA.

Congress enacted 28 U.S.C. § 1658 on December 1, 1990, which provides the following statute of limitations for general civil claims:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658.

When enacted in 1994, USERRA did not provide a specific statute of limitations. Instead, it stated, "[n]o State statute of limitations shall apply to any proceeding under this chapter." 38 U.S.C. § 4323(c)(B)(6). USERRA was silent as to whether the four-year federal statute of limitations in § 1658 applied.

In 2008, USERRA was amended by the Veterans' Benefits Improvement Act ("VBIA") and now states:

> If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim.

38 U.S.C. § 4327(b).

Plaintiff asks the Court not to apply § 1658 to USERRA claims, arguing legislative history illustrates that Congress never intended a statute of limitations to apply to such claims. Whereas legislative intent was particularly useful in the comparability analysis, where the language of the Act was ambiguous, here, it was not ambiguous and cannot be ignored. Under the plain reading of § 1658, Plaintiff's action

"arises under" USERRA, which was "enacted after" § 1658. The cases cited by Plaintiff that refused to apply a federal statute of limitations in VRRA cases were decided before § 1658 was effective. *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800 (8th Cir. 1979); *Blake v. City of Columbus*, 605 F. Supp. 567 (S.D. Ohio 1984). Section 1658 was in effect at the time Congress enacted USERRA in 1994, and Congress did not expressly reject § 1658 in USERRA until the VBIA amendment. Therefore, the "otherwise provided by law" exception to § 1658 does not apply, and the federal four-year statute of limitations unambiguously applied to all claims filed before October 10, 2008. Most courts to consider whether § 1658 applies to pre-VBIA USERRA claims have found that it does. *See, e.g., Risner v. Haines*, Case No. 1:06-cv-1953, 2009 WL 4280734, at *8 (N.D. Ohio Nov. 24, 2009); *Wagner v. Novartis Pharm. Corp.*, 565 F. Supp. 2d 940, 945 (E.D. Tenn. 2008); *Middleton v. City of Chicago*, 578 F.3d 655, 662 (7th Cir. 2009).

Defendant and Plaintiff next dispute whether the VBIA amendment should be applied retroactively to revive Plaintiff's stale claims. Unlike most of the cases cited by Defendant, this is not a classic case of retroactivity where a plaintiff asks the court to apply an amendment retroactively to a claim filed before the amendment was effective. *See Wagner*, 565 F. Supp. 2d at 943; *Middleton*, 578 F.3d at 657. The VBIA amendment prospectively applies to any person who "seeks to file a complaint or claim with . . . a Federal or State court . . . " and mandates that "there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. § 4327. Here, it is undisputed that Plaintiff did not file his claim until 2009, well after the VBIA amendment was adopted on October 10, 2008. Nonetheless, the amendment would have a retroactive effect if

applied to claims based on actions that occurred prior to the amendment's effective date.

If a statute would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed, the statute's application has a retroactive effect. *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994).

Although the Sixth Circuit has found application of amended statutes of limitations not to be retroactive, this case is distinguishable. The Sixth Circuit has held that "retroactivity concerns generally do not bar the application of a changed limitation period to a suit that is filed after the amendment's effective date." *Hyatt v. U.S.*, 207 F.3d 831, 832 (6th Cir. 2000) (citation omitted). Application of an amended statute of limitations has been determined not to be retroactive when it does not alter the legal consequences of events completed before the amendments to limitations periods or increase either party's liability. *See, e.g., Id.* at 832; *Forest v. U.S. Postal Service*, 97 F.3d 137, 139–40 (6th Cir. 1996).

In this case, by the time the statute of limitations was removed, the four-year statute of limitations under § 1658 had run for all of Plaintiff's claims based on actions committed before October 10, 2004. Thus, application of the VBIA to those claims would increase Defendant's liability by eliminating a then-existing affirmative defense available to Defendant. Under the *Landgraf* analysis, in these circumstances, application of the VBIA amendment to Plaintiff's claim would increase Defendant's liability and should be deemed retroactive.

Generally, there is a presumption against retroactive legislation, and unless

Congress has clearly manifested an intent to the contrary, conduct should be assessed under the law as it existed when the conduct occurred. *Landgraf*, 511 U.S. at 265. But, "potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Id.* at 267. Therefore:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect . . . . If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf*, 511 U.S. at 280. Under this analysis, the Court must first consider whether Congress clearly prescribed the VBIA's proper reach. It has. On its face, the amendment applies to all *complaints* filed after enactment of the amendment and states that there is to be no limit for the filing of such complaints. 38 U.S.C. § 4327(b). Additionally, even if Congress has not expressly prescribed the proper reach, there is clear Congressional intent favoring a retroactive application. Prior to 1990, the ban on applying a State statute of limitations effectively meant that no statute of limitations applied, and VBIA restored this effect, indicating that Congress never intended a statute of limitations to apply to USERRA claims. The legislative history of the VBIA confirms it was meant to "clarify that the original intent of Congress was that USERRA would not be subject to a federal or state statute of limitations period." S. Rep. No. 110-449, 26 (2008) (internal quotations omitted). An interpretation that Congress never intended a statute of limitations to apply evidences Congress' intent the VBIA amendment should be retroactive. The Court finds Congress intended the amendment to apply at least

where, as here, a plaintiff files a complaint after the effective date of the amendment but where the claim is based on actions that were previously subject to a stricter limitations period.

The final issue is what effect to give an amendment that Congress intended to be applied retroactively when retroactive application would deprive one of the parties of an affirmative defense that existed prior to the amendment. In *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 950 (1997), the Supreme Court declined to apply an amendment to the False Claims Act where such an amendment would subject the defendant to previously foreclosed *qui tam* litigation. The Supreme Court analogized the amendment at issue to extending a statute of limitations after the pre-existing period of limitations has expired and stated such an extension "impermissibly revives a moribund cause of action." *Id.* at 950 (internal citation omitted). Applying the VBIA retroactively in this case to claims based on actions that occurred prior to October 10, 2004 would likewise impermissibly revive moribund causes of action.

Conversely, applying the VBIA retroactively to Plaintiff's causes of action that were not yet time-barred by the enactment date of the VBIA does not revive moribund causes of action, affect Defendant's affirmative defense, or increase its liability. As of October 10, 2008, Defendant could not rely on a statute of limitations defense for those claims. The Court's conclusions with respect to the statute of limitations issue comports with several other decisions analyzing the VBIA. *See Roark v. Lee Co.*, Case No. 3:09-0402, 2009 WL 4041691, at *5 (M.D. Tenn. Nov. 20, 2009) (finding *Hughes Aircraft Co.* prohibits application of the VBIA to causes of action that had expired prior to its enactment); *Goodman v. City of New York, et al.*, Case Nos. 10 Civ. 5236(RJS),

11 Civ. 3432(RJS), 2011 WL 4469513, at *8 (S.D.N.Y. Sept. 26, 2011) (no impermissible retroactive effect in applying VBIA where defendants could not have asserted a statute of limitations defense at time amendment was enacted); *Andritzky v. Concordia Univ. Chicago*, Case No. 09 C 6633, 2010 WL 1474582, *at 5 (N.D. Ill. Apr. 8, 2010) (barring only claims based on events occurring before October 10, 2004). For these reasons, Defendant's motion is granted with respect to claims based on actions occurring before October 10, 2004. Such claims are time-barred; claims based on actions occurring thereafter are not time-barred.

### 2. Laches

Defendant further argues that Plaintiff's claims based on actions occurring prior to December 13, 2006, although not barred by the statute of limitations, should be barred by the doctrine of laches. To prevail on a defense of laches, Defendant has the burden of proving both unreasonable delay on the part of the plaintiff and resulting prejudice. *Brown-Graves Co. v. Cent. States, Se. and Sw. Areas Pension Fund*, 206 F.3d 680, 684 (6th Cir. 2000).

Defendant argues Plaintiff has known of Defendant's benefits policies and the benefits he has received (or not received) since he began working in 2000. Defendant then argues that waiting until June 2009 constitutes an unreasonable delay which prejudiced Defendant because Defendant's document retention policy is to keep only such employment schedules and payroll records for the most recent two years. Defendant only started keeping the records relating to Plaintiff when Plaintiff filed his grievance with Defendant in 2008. Therefore, Defendant will be unable to use the destroyed records to rebut Plaintiff's claims that he is entitled to back pay for a given

day.

At least some of Plaintiff's delay in bringing his claim is reasonable as he was deployed on active duty for the year 2005. Further, Defendant was on notice of Plaintiff's grievance at least by September 29, 2008. Consequently, it should have preserved all employment and payroll records with respect to Plaintiff for the prior two years, or dating back to September 29, 2006. As to claims for pay before that date, it is Plaintiff's burden to prove damages. Without the scheduling records, it remains to be seen how Plaintiff intends to prove that he was scheduled to work on a certain day that he had military duty. Any delay in filing suit, thus, may prejudice Plaintiff's claim for damages but is not a reason to bar his claim based on laches. Moreover, until 2008, the applicable statute of limitations was four years, and Defendant should not be rewarded simply because it chose to destroy documents every two years. *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 321 (6th Cir. 2001) ("There is a strong presumption that a plaintiff's delay in bring[ing] suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed."). Thus, the Court declines to apply the doctrine of laches to bar Plaintiff's properly supported claims for actions occurring prior to September 29, 2006. Accordingly, Defendant's motion is denied on this point.

## C. Back Pay

Defendant contends that even if Plaintiff prevails on the comparability argument, his damages must be limited to exclude certain days for which he was not on AK Steel's work schedule and overtime. Plaintiff contends he can prove he was scheduled to work on some days but could not due to military obligations, a jury can infer Plaintiff would

have worked (but for his military obligations) even on days he was not on the schedule or the schedule is not available, and he would have worked overtime on many days that he served in the military had he been given the opportunity.

When a plaintiff prevails in a USERRA action, the court may "require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B). If Plaintiff prevails in his suit, he is only entitled to recover benefits for the days he would have worked at AK Steel but for his military obligations, and his damages "must not be based on mere speculation, guess or conjecture." *See John E. Green Plumbing and Heating Co., Inc. v. Turner Const. Co.*, 742 F.2d 965, (6th Cir. 1984) (internal quotation omitted).

Viewed in the light most favorable to Plaintiff, Plaintiff has offered some evidence supporting damages. Plaintiff offered various weekly work schedules that include his name as a worker for the week. Pl. Resp. in Opp. Def. Mot. for Summ. J. Exs. C, D, ECF No. 24. In addition, Plaintiff has offered what appear to be itemized pay sheets from Defendant's archives. *Id.* Ex. B, E. Plaintiff has also provided information detailing pay for military work. *Id.* Ex. A. Whether Plaintiff can prove he was scheduled to work on a given day is a question of fact for trial.

With respect to overtime, the parties dispute whether Plaintiff would be able to show that overtime was available and that he would have worked it but for his military leave. The Court disagrees that this is the proper issue. At issue is not whether an employer has to pay an employee for overtime if he would have worked overtime on a day that he was required to perform military duties. Rather, the issue is whether

Plaintiff was entitled to the benefits under the jury duty/witness leave policy. Even if Plaintiff prevails, Plaintiff has not argued that employees on jury/witness duty leave are entitled to overtime pay for overtime opportunities missed because of jury/witness duty. In fact, the plain language of the jury duty policy states that time spent on jury duty will count as hours worked for determining overtime, but pay for jury or witness duty "will be calculated at eight times the employee's straight time hourly bid job rate." Brill Dep. Ex. N PAGEID # 194, ECF No. 20. Absent even an allegation that overtime pay is a benefit afforded employees on a comparable leave of absence, Defendant must prevail as a matter of law.

Summary judgment is granted for Defendant with respect to Plaintiff's claims for lost overtime pay. The remaining extent of Plaintiff's damages is a question of fact to be decided if Plaintiff prevails on his underlying claim.

### D.    Liquidated Damages

Defendant next argues that as a matter of law, Plaintiff cannot recover liquidated damages because Plaintiff cannot prove willfulness. Plaintiff argues he gave notice to Defendant's Human Resources representative of a possible USERRA violation, that Defendant failed to follow up with this notice, and that a reasonable jury could conclude Defendant acted with reckless disregard, warranting liquidated damages.

A court may award liquidated damages for a violation of USERRA if the court determines the employer's failure to comply with the Act was willful. 38 U.S.C. § 4323(d)(1)(c). The Act does not define "willful," and therefore, courts apply the definition of "willful" from other contexts to USERRA. *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x. 396, 403 (6th Cir. 2008) (citations omitted). Thus, liquidated damages

are warranted where the employer acted with knowledge or reckless disregard as to whether it violated the law. *Id.* It is not enough to show an employer knew the law was "'in the picture'" or "'acted without a reasonable basis for believing that it was complying with the statute.'" *Id.* (quoting *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 423 (6th Cir. 1999)).

Typically, a court must find an underlying USERRA violation before it can consider willfulness to make a liquidated damages decision. *Id.* In this instance, however, whether Defendant's violation was willful will not depend on a preliminary finding of comparability by the Court, because the underlying facts of Defendant's actions or failure to act are already fully briefed and are undisputed. Even assuming the Court finds the two types of leave are legally comparable, Defendant's actions were not willful. Viewing the evidence in the light most favorable to Plaintiff, Defendant was aware that USERRA existed. There is no evidence to support an inference that Defendant acted in bad faith, and instead, the evidence shows Defendant compensated its employees on military leave the difference between their traditional salary and government pay in order to make such employees whole. The law was unsettled as to whether the two types of leave are comparable, such that Defendant could not have knowingly or with reckless disregard violated the law. Defendant's Human Resources representative was himself a veteran and stated it was his belief that Plaintiff was receiving everything to which he was entitled. There is no evidence to suggest Defendant acted out of anything other than an honest, but mistaken, belief that it construed USERRA properly. Defendant's motion for summary judgment as to liquidated damages is granted as no reasonable jury could find Defendant violated the

law knowingly or with reckless disregard.

## IV. DISPOSITION

For the above reasons, the Court **DENIES in part and GRANTS in part**

Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**